IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 42574

| STATE OF IDAHO, | ) | 2015 Unpublished Opinion No. 757 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: December 11, 2015 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| DEVIN RAY BISCHOFF, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Fred M. Gibler, District Judge.

Order denying motion to suppress, <u>reversed</u>; judgment of conviction, <u>vacated</u>; case <u>remanded</u>.

Sara B. Thomas, State Appellate Public Defender; Maya P. Waldron, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent.

_____

HUSKEY, Judge

Devin Ray Bischoff appeals from the district court's denial of his motion to suppress. Bischoff argues that the district court erred in deciding he consented to law enforcement to search his residence. In the alternative, he argues that any consent given was involuntary due to the coercive nature of the interaction with law enforcement. For the reasons set forth below, we reverse the order denying the motion to suppress evidence, vacate Bischoff's judgment of conviction, and remand the case to the district court.

# I.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

At approximately 9:00 p.m. on January 27, 2014, Coeur d'Alene police officers responded to a citizen report of a small child walking alone on the road. Citizens in the area assisted the officers in locating the child's residence, and officers made contact with the child's father, Devin Ray Bischoff. Bischoff informed the officers that he left his three-year-old child, R.B., alone in his apartment, went to the parking lot to work on a vehicle, and was not aware that the child had left the apartment.

The investigation into this incident was recorded on one of the officer's body cameras and the video was admitted as an exhibit during the motion to suppress hearing. In order to determine whether it was safe to leave R.B. in Bischoff's custody, the officers asked whether there was anything in the apartment that would make the apartment unsafe for the child and whether Bischoff was under the influence of or in possession of a controlled substance. Bischoff was asked several times if the officers could enter the apartment to look for anything that would be dangerous to R.B. and to look for controlled substances. The following excerpts of the conversation between Bischoff and the officers illustrate the issue before this Court on appeal-- whether Bischoff consented to the search of his apartment.

> Officer 1: Are you using or anything?
> Bischoff: No.
> Officer 1: Is there anything in your apartment?
> Bischoff: Nope.
> Officer 1: You give my partner permission to look in your apartment and go through it?
> Bischoff: Not without my wife.
> . . . .
> Officer 1: So my question for you is if you think it's okay for your son to be in that apartment, why is it not okay for my partner to go in and see if there's anything dangerous in there?
> Bischoff: There's nothing dangerous.
> Officer 1: So why can we not go in and look around? You got a bong or something like that? I don't care about bongs and marijuana, dude, I really don't. Is that what's in there? Is that it?
> Bischoff: Yeah.
> . . . .
> Officer 1: You going to let my partner go in and get that bong? I'm not going to have a bong or a pipe around with the three-year-old kid.
> Bischoff: Okay
> Officer 1: Does he have permission to go in? I'll talk to your wife, too.

2

. . . .

Officer 1:  She's going to flip out on you, isn't she?  Because I'm not going to leave him with you, man.

Bischoff:  Okay.

Officer 1:  That's just not an option.

Officer 2:  Where's your stuff at?

Officer 1:  Don't go in there yet.  Let me call her first.

During the call to Bischoff's wife, she acquiesced to the request to allow a search of the apartment after she was told that Bischoff had consented.  The officers entered the apartment and found methamphetamine, marijuana, and drug paraphernalia.

Bischoff was arrested and charged with possession of a controlled substance (methamphetamine) and misdemeanor injury to a child.  His motion to suppress was denied and the district court ruled that Bischoff's response, "okay," to the officers' third request to enter the apartment constituted voluntary consent to the search.  Bischoff entered a conditional guilty plea, reserving the right to appeal the denial of his motion to suppress.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated.  When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found.  *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996).  At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court.  *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

Bischoff appeals the denial of his motion to suppress and argues that the district court erred in finding that he voluntarily consented to the search of his residence.  Bischoff first argues that the district court's finding that he consented to the search of his residence is not supported by the record.  In the alternative, Bischoff argues that even if he did consent to the search, such consent was not voluntary due to the coercive nature of his interaction with law enforcement.

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. Warrantless searches are presumed to be unreasonable and therefore violative of the Fourth Amendment. *State v. Weaver*, 127 Idaho 288, 290, 900 P.2d 196, 198 (1995). The State may overcome this presumption by demonstrating that a warrantless search either fell within a well-recognized exception to the warrant requirement or was otherwise reasonable under the circumstances. *Id.*

Although a warrantless entry or search of a residence is generally illegal and violative of the Fourth Amendment, such an entry or search may be rendered reasonable by an individual's consent. *State v. Johnson*, 110 Idaho 516, 522, 716 P.2d 1288, 1294 (1986); *State v. Abeyta*, 131 Idaho 704, 707, 963 P.2d 387, 390 (Ct. App. 1998). In such instances, the State has the burden of demonstrating consent by a preponderance of the evidence. *State v. Kilby*, 130 Idaho 747, 749, 947 P.2d 420, 422 (Ct. App. 1997). The State must show that consent was not the result of duress or coercion, either direct or implied. *Schneckloth v. Bustamonte*, 412 U.S. 218, 248 (1973); *State v. Whiteley*, 124 Idaho 261, 264, 858 P.2d 800, 803 (Ct. App. 1993). The voluntariness of an individual's consent is evaluated in light of all the circumstances. *Whiteley*, 124 Idaho at 264, 858 P.2d at 803. Consent to search may be in the form of words, gestures, or conduct. *State v. Knapp*, 120 Idaho 343, 348, 815 P.2d 1083, 1088 (Ct. App. 1991). Whether consent was granted voluntarily, or was a product of coercion, is a question of fact to be determined by all the surrounding circumstances. *State v. Hansen*, 138 Idaho 791, 796, 69 P.3d 1052, 1057 (2003).

"Consent must be 'unequivocal and specific' and 'freely and intelligently given'. There must be convincing evidence that defendant has waived his rights. There must be clear and positive testimony." *United States v. Shaibu*, 920 F.2d 1423, 1426 (9th Cir. 1990) (quoting *United States v. Page*, 302 F.2d 81, 83-84 (9th Cir. 1962). In the event that consent is inferred from the facts and circumstances, the State's burden of proving consent is the "heaviest." *State v. Staatz*, 132 Idaho 693, 695, 978 P.2d 881, 883 (Ct. App. 1999) (quoting *Shaibu*, 920 F.2d at 1426).

In this case, the district court erred in finding that Bischoff consented to the search. The district court's decision rests on the determination that Bischoff's response of "okay" to the officer's statement--"You going to let my partner go in and get that bong? I'm not going to have a bong or pipe around with the three-year-old kid."--constituted voluntarily given consent. The

4

district court found that this statement could be reasonably interpreted by the officer to indicate consent. However, the State's burden of proving consent goes beyond the officer's reasonable interpretation of the situation. While the State may rely on a defendant's words, gestures, or conduct to prove that consent was given, it still must meet the burden of proving unequivocal and specific consent. Here, the "okay" relied on the by district court is not unequivocal or specific evidence of consent. Bischoff's statement was given in response to both a question and a statement by the officer, and there is no evidence in the record to clearly indicate whether Bischoff was responding to the question about whether he was giving his permission for the search, or whether he was simply acknowledging that he heard the question and statement, or whether he was agreeing with the officer that a three-year-old child should not be in the same apartment with controlled substances. There is no other evidence in the record to show that the "okay" was accompanied by affirmative conduct to indicate that Bischoff was offering his consent. In fact, the record shows that throughout the conversation between Bischoff and the officers, Bischoff responded to several questions and statements with "okay" or other one word responses. In the absence of additional supporting conduct, and given the nature of the question and statement, we cannot conclude that "okay" amounts to unequivocal and specific consent.

In addition, other circumstances in the record do not support the State's argument and the district court finding that the officer could reasonably interpret "okay" as consent. Specifically, after the "okay" the officer again asked Bischoff whether he could search the apartment and then prevented the second officer from entering the apartment until after he received consent from Bischoff's wife. Both of these additional facts indicate the officer did not believe that consent was established by the "okay" because the officer undertook additional steps in order to obtain consent before allowing his partner to enter the apartment to search for controlled substances. The record does not support the district court's finding that Bischoff gave consent to the search of his apartment. The entry into and search of Bischoff's residence was a violation of the Fourth Amendment and all evidence derived from the entry must be suppressed.

Because we have determined that Bischoff did not give consent for the search of his residence and we reverse the district court's decision, we will not address the arguments as to the voluntariness of the consent.

5

## IV.

## CONCLUSION

We conclude that the district court erred in denying Bischoff's motion to suppress evidence because the State did not meet its burden to prove that Bischoff specifically and unequivocally consented to allow the officers to enter his apartment to search for controlled substances. Accordingly, the motion to suppress should have been granted and the evidence excluded. We reverse the district court's order denying the motion to suppress, vacate the judgment of conviction, and remand the case for further proceedings consistent with this opinion. Chief Judge MELANSON and Judge GRATTON **CONCUR**.